# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

CHYNA N. GILBERT,  :
        :
   Plaintiff,  :  No. 3:19-cv-01286
        :
  v.     :  (SAPORITO, M.J.)
        :
ANDREW SAUL,[1]  :
Commissioner of   :
Social Security,   :
        :
   Defendant.  :

## MEMORANDUM

This is an action brought under 42 U.S.C. §405(g), seeking judicial review of the Commissioner of Social Security's ("Commissioner") final decision denying Chyna N. Gilbert ("Gilbert") claim for supplemental security income under Title XVI of the Social Security Act. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(c) and

---

[1] Andrew Saul was sworn in as Commissioner of Social Security on June 17, 2019. He is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d); *see also* Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g)(action survives regardless of any change in the person occupying the office of Commissioner of Social Security). The caption in this case is amended to reflect this change.

Rule 73 of the Federal Rules of Civil Procedure. (Doc. 9, Doc. 10, Doc. 11). For the reasons stated herein, we respectfully recommend that the decision of the Commissioner be **AFFIRMED**.

## I.   *Background and Procedural History*

Gilbert is an adult individual born August 9, 1997, who was 18 years old at the time of her alleged onset date of disability—September 26, 2015. (Tr. 105). Gilbert's age at the onset date makes her a "younger person" under the Social Security Act. *See* 20 C.F.R. § 404.1563(c). Gilbert graduated from high school in 2016, and has no specialized vocational training. (Tr. 156). Additionally, Gilbert has no past relevant work experience, as she has never worked. (Tr. 181-88). On June 12, 2016, Gilbert protectively filed for supplemental security income pursuant to Title XVI of the Social Security Act. (Tr. 21). In her application, Gilbert alleged that she became disabled beginning September 26, 2015, as a result of fetal alcohol syndrome, born crack addicted, organic brain disfunction, bi-polar 1 disorder with psychosis, and anxiety disorder. (Tr. 155). Gilbert's claim was initially denied on August 23, 2016. (Tr. 21). Thereafter, Gilbert filed a timely request for an administrative hearing on September 26, 2016, and it was granted.

(*Id*.). Gilbert appeared and testified before ALJ, Daniel Balutis, on April 16, 2018, in Wilkes Barre, Pennsylvania. (Tr. 49). In addition, an impartial vocational expert ("VE"), Irene H. Montgomery, and plaintiff's mother, Eva Marie Gilbert, also appeared and testified during the administrative hearing. (Tr. 21, 59). Although informed of the right to representation, Gilbert chose to appear and testify without the assistance of an attorney or other representative. (Tr. 21). At the time of the hearing, Gilbert was 20 years old and resided with her sister in Athens, Pennsylvania. (Tr. 59).

In a written decision dated July 31, 2018, the ALJ denied Gilbert's application for benefits. (Tr. 18). Gilbert sought review of her claims by the Appeals Council of the Office of Disability Adjudication and Review, but her request was denied for review on June 6, 2019. (Tr. 1). Gilbert subsequently filed an appeal to the U.S. District Court for the Middle District of Pennsylvania on July 24, 2019, arguing that the ALJ's decision was not supported by substantial evidence. (Doc. 1). On September 25, 2019, the Commissioner filed his answer, in which he maintains that the ALJ's decision was correct and in accordance with the law and regulations. (Doc. 9, at 3). This matter has been fully briefed by the

parties and is ripe for decision. (Doc. 16, Doc. 17, Doc. 18).

On this score, Gilbert's treatment history discloses that Gilbert has a history of mental health conditions, of which she received treatment from Stephanie King, Certified Registered Nurse Practitioner ("NP King"). (Tr. 27). In May and June 2016, Gilbert was voluntarily admitted to a psychiatric hospital. (Tr. 27). At the time of her admission, Gilbert was having trouble performing daily tasks and was seeing shadows and hearing voices. (Tr. 280). Following her discharge from the hospital, Gilbert began a partial hospitalization program for continuing stabilization. (Tr. 295). Within days, however, Gilbert had another psychiatric admission and underwent medication changes, progressing fairly well, later returning to a partial hospitalization program. (Tr. 303-09). Gilbert continued to do well with no hallucinations and positive moods and was discharged from the partial hospitalization program in July 2016. (Tr. 310).

During Gilbert's brief psychiatric admissions, Gilbert continued to see NP King with no complaints or problems noted in the medical record. (Tr. 575-96). However, the medical record reflects that in October 2016, upon examination, Gilbert was not compliant with her medications and

was becoming more and more depressed. (Tr. 589). By November 2016, Gilbert was struggling with hallucinations again and was still not compliant with her medications. (Tr. 586-87).

In January 2017, Gilbert started a new medication and had no more complaints of hallucinations or dangerous behaviors. (Tr. 582). In March 2017, Gilbert moved into her own apartment with her sister, noting that she felt rested, with no scary thoughts or paranoia, no psychosis with some slight anxiety, but nothing major. (Tr. 579). In July 2017, Gilbert went on vacation and returned feeling lethargic, but was sleeping well, and not hallucinating. (Tr. 816-17). After adding another medication, Gilbert reported that things were good. (Tr. 811, 814). The medical record reflects that Gilbert was making better decisions, not using any dating websites, cutting off friends with bad influences, not hearing anymore voices or scary thoughts, and was sleeping well. (Tr. 808).

While the longitudinal evidence of record demonstrates that Gilbert suffers from depression, anxiety, and hallucinations, contrary to Gilbert's contentions, the record fails to reflect a diagnosis of schizophrenia from a physician, but rather a rule out from her inpatient hospitalization in 2016. (Tr. 280-331). As for the opinion evidence of record, Dr. Anthony

Galdieri ("Dr. Galdieri"), opined that Gilbert had mild to moderate limitations in the "paragraph B" criteria, however, her impairments did not preclude simple routine tasks. (Tr. 109-10).

## II.   *Legal Standards*

When reviewing the denial of disability benefits, the Court's review is limited to determining whether those findings are supported by substantial evidence in the administrative record. *See* 42 U.S.C. § 405(g) (sentence five); *Id.* § 1383(c)(3); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). In an adequately developed factual record, substantial evidence may be "something less than the weight of the

evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003). The question before the Court, therefore, is not whether the claimant is disabled, but whether the Commissioner's finding that he or she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.") (alterations omitted); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The [Commissioner]'s determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

To receive disability benefits, a claimant must demonstrate an

"inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Id.* § 1382c(a)(3)(A); *see also* 20 C.F.R. § 404.1505(a); *Id.* § 416.905(a). To satisfy this requirement, a claimant must have a severe physical or mental impairment[2] that makes it impossible to do his or her previous work or any other substantial gainful activity[3] that exists in the national economy. 42 U.S.C. § 423(d)(2)(A); *Id.* § 1382c(a)(3)(B); 20 C.F.R. § 404.1505(a); *Id.* § 416.905(a).

The Commissioner follows a five-step sequential evaluation process in determining whether a claimant is disabled under the Social Security Act. 20 C.F.R. § 404.1520(a); *Id.* § 416.920(a). Under this process, the Commissioner must determine, in sequence: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a

---

[2] A "physical or mental impairment" is an impairment resulting from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3); *Id.* § 1382c(a)(3)(D).
[3] "Substantial gainful activity" is work that (1) involves performing significant or productive physical or mental duties, and (2) is done (or intended) for pay or profit. 20 C.F.R. § 404.1510; *id.* § 416.910.

severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment;[4] (4) whether the claimant is able to do past relevant work, considering his or her residual functional capacity ("RFC");[5] and (5) whether the claimant is able to do any other work, considering his or her RFC, age, education, and work experience. *Id.* § 404.1520(a); *Id.* § 416.920(a). The claimant bears the initial burden of demonstrating a medically determinable impairment that prevents him or her from doing past relevant work. 42 U.S.C. § 423(d)(5); *Id.* § 1382c(a)(3)(H)(i); 20 C.F.R. § 404.1512; *Id.* § 416.912; *Mason*, 994 F.2d at 1064. Once the claimant has established at step four that he or she cannot do past relevant work, the burden then shifts to the Commissioner at step five to show that jobs exist in significant numbers in the national economy that the claimant could perform consistent with his or her RFC,

---

[4] An extensive list of impairments that warrant a finding of disability based solely on medical criteria, without considering vocational criteria, is set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1.

[5] "Residual functional capacity" is the most a claimant can do in a work setting despite the physical and mental limitations of his or her impairment(s) and any related symptoms (e.g., pain). 20 C.F.R. § 404.1545(a)(1); *id.* § 416.945(a)(1). In assessing a claimant's RFC, the Commissioner considers all medically determinable impairments, including those that are not severe. *Id.* § 404.1545(a)(2); *id.* § 416.945(a)(2).

age, education, and past work experience. 20 C.F.R. § 404.1512(f); *Id.* § 416.912(f); *Mason*, 994 F.2d at 1064.

## III.   Discussion

In his July 2018, decision denying Gilbert's claim for benefits, the ALJ evaluated Gilbert's application for benefits at each step of the sequential evaluation process. At step one, the ALJ concluded that Gilbert had not engaged in substantial gainful activity since June 13, 2016, the application date. (Tr. 23). At step two, the ALJ found that the following impairments were medically determinable and severe during the relevant period: bipolar disorder and schizophrenia. (*Id.*). At step three, the ALJ found that Gilbert did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, during the relevant period. (Tr. 24). Between steps three and four, the ALJ fashioned an RFC considering Gilbert's limitations from her impairments:

> After careful consideration of the entire record, the undersigned finds that [Gilbert] has the [RFC] to perform a full range of work at all exertional levels but with the following nonexertional limitations: [Gilbert] is limited to simple work-related decisions and can tolerate frequent changes in routine work setting. [Gilbert] can frequently

interact with supervisors, coworkers, and occasionally with
the public. Time off task can be accommodated by normal
breaks.

(Tr. 26).

At step four, the ALJ found that Gilbert had no past relevant work
experience. (Tr. 29). At step five, the ALJ determined that based on
Gilbert's age, education, work experience, and RFC that there were a
significant number of jobs in the national economy that she could
perform, including working as a lumber stacker, a nursery agricultural
setting, and a packager. (Tr. 30).

Gilbert contends that the decision of the ALJ is not supported by
substantial evidence of record and raises four issues on appeal attacking
various aspects of the ALJ's decision. We shall address each argument
seriatim.

### A. There is No Basis for Remand Under Sentence Six of § 405(g)

First, Gilbert argues that her case is entitled to a remand under
sentence six of § 405(g). (Doc. 16, at 11-13). In this case, Gilbert submitted
to the Appeals Council two medical source statements from two treating
providers—NP King and Sarah Dekay, Licensed Social Worker (LSW). In
pertinent part, the Court may "remand the case to the Commissioner for

consideration of that evidence under sentence six § 405(g), only if the evidence is 'new' and 'material,' and only if the claimant showed 'good cause' why it was not presented to the ALJ." *Pennington v. Comm'r of Soc. Sec.*, 683 F. App'x 168, 170 (3d Cir. 2017). First, Gilbert argues that the two medical opinions are 'new' because they were not in existence at the time the ALJ issued his decision on July 31, 2018. (Doc. 16, at 11). Second, Gilbert argues that the two medical opinions are 'material' because they directly pertain to her functional limitations caused by her psychiatric issues during the relevant period of time (since June 13, 2016, and before the ALJ's decision). (*Id.*). Third, Gilbert asserts that there is 'good cause' for not having previously submitted this evidence, including the following:

> (1) [T]he evidence did not exist at the time of the hearing and ALJ's decision, Tr. 9-15; (2) [p]laintiff has limited intellectual functioning due to fetal alcohol syndrome, Tr. 587 (below average intelligence); (3) she has severe psychiatric issues that impede her thinking ability; (4) she did not fully understand the administrative process and was very panicked by it, Tr. 796; (5) the medical opinion questionnaires are propriety legal work product and, accordingly, Plaintiff had no opportunity to get forms completed until she retained the undersigned counsel; and (6) she was proceeding *pro se* at the time. 20 C.F.R. § 404.970(b)(2), (3).

(Doc. 16, at 12). Gilbert further contends that there is a reasonable

probability the new evidence would change the outcome of the case based

upon the following reasons:

> (1) The opinions are from two treating providers; (2) the providers had an ongoing long-term treating relationship with Plaintiff; (3) they conducted multiple examinations; (4) their opinions are supported by their explanations of Plaintiff's paranoid schizophrenia, delusional disorder, impulsiveness, bipolar disorder, hallucinations (audio, visual, and tactile), depressed mood, anxiety, paranoia, and delusions, Tr. 10-15; (5) their opinions are consistent with the overall medical records set forth above showing the need for two psychiatric hospitalizations and ongoing issues with anxiety, depression, panic attacks, paranoia, and hallucinations; (6) the two opinions are consistent with one another; (7) both opinions assess psychiatric limitations inconsistent with the ability to meet the basic mental demands of unskilled work, thereby demonstrating Plaintiff is disabled; and (8) both opinions assess limitations to work pace and attendance inconsistent with competitive employment.

(Doc. 16, at 13).

In response, the Commissioner first argues that the evidence that

Gilbert presents is not 'new' because Gilbert could have obtained the two

medical opinions prior to the ALJ's decision. (Doc. 17, at 11). Second, the

Commissioner argues that the evidence is not 'material' because Gilbert

relies on two opinions authored by a nurse and a social worker, which

pursuant to 20 C.F.R. §§ 416.902(a)(1)-(8), 416.927(a) are not acceptable

medical opinions. (Doc. 17, at 12). Thus, there is no reasonable

probability that these opinions would change the outcome of the ALJ's decision. (*Id.*). Third, the Commissioner argues that Gilbert does not establish 'good cause' as Gilbert contends that she meets the 'good cause' requirement because she was not represented by counsel. (Doc. 17, at 13). The Commissioner contends that it is longstanding precedent that a claimant's decision to represent herself at the administrative level does not constitute 'good cause' for the claimant to have "a second bite at the apple." (Doc. 17, at 13).

If "a claimant seeks to rely on evidence that was not before the ALJ," the Court may "remand the case to the Commissioner for consideration of that evidence under the sixth sentence of § 405(g), but only if the evidence is 'new' and 'material,' and only if the claimant shows 'good cause' why it was not presented to the ALJ." *Pennington*, 683 F. App'x at 170. So-called "sixth-sentence remand is appropriate when the district court learns of evidence not in existence or available to the claimant at the time of the administrative proceeding that might have changed the outcome of that proceeding." *Sullivan v. Finkelstein*, 496 U.S. 617, 626 (1990). The claimant has the burden to make this showing. *Pennington*, 683 F. App'x at 170.

In general, evidence is 'new' if it was "not in existence or available to the Plaintiff at the time of the administrative proceeding" and not merely cumulative of the evidence of record. *Sullivan*, 496 U.S. at 626; *see also Melkonyan v. Sullivan,* 501 U.S. 89, 100 (1991); *Szubak v. Secretary of Health and Human Services*, 745 F.2d 831, 833 (3d Cir. 1984). Evidence is 'material' if it is relevant and probative. *Szubak*, 745 F.2d at 833. An implicit materiality requirement is that the evidence must relate to the period for which benefits were denied, and there must be a reasonable probability that the additional evidence will change the outcome of the decision. (*Id.*). As for the 'good cause' requirement, "[u]nder existing law the court itself . . . has discretionary authority 'for good cause' to remand the case back to the ALJ." *Melkonyan*, 501 U.S. 89, 100 (1991).

Contrary to Gilbert's contentions, we find no basis for remand under sentence six of § 405(g). First, Gilbert argues that the two medical source opinions constitute 'new' evidence because they were not in existence at the time the ALJ issued his decision. (Doc. 16, at 11). However, as correctly asserted by the Commissioner, Gilbert could have obtained the two medical source statements from NP King and Ms.

Dekay prior to the ALJ's decision. Gilbert stated that she had an ongoing, long-term treating relationship with both NP King and Ms. Dekay. Thus, the medical source statements could have been acquired prior to the ALJ's decision.

Second, we find that this evidence fails to meet the materiality requirement under sentence six of § 405(g) because it is not relevant to the period at issue and the two opinions provided by NP King and Ms. Dekay are not medical opinions as defined under 20 C.F.R. §§ 416.902(a)(1)-(8). At the outset, the medical source statement completed by NP King was completed on August 30, 2018—one month after the ALJ's decision, and the medical source statement completed by Ms. Dekay was completed September 4, 2018—approximately two months after the ALJ's decision. (Doc. 1, at 9-10, Doc. 1, at 11-12). Thus, both opinions were acquired after the ALJ's decision and are neither relevant or probative in this case. Further, as correctly stated by the Commissioner, pursuant to the regulations nurse practitioners and social workers are not acceptable medical sources, and therefore cannot provide medical opinions. *See* 20 C.F.R. §§ 416.902(a)(1)-(8), 416.927(a). Therefore, Gilbert's argument that the evidence satisfies the materiality

requirement under sentence six of § 405(g) is without merit.

Third, we find that Gilbert fails to demonstrate 'good cause' for her failure to submit this additional evidence to the ALJ prior to his decision. Specifically, Gilbert argues that she had 'good cause' for failing to submit this additional evidence to the ALJ prior to his decision because the evidence was not available; she had limited intellectual functioning due to fetal alcohol syndrome and severe psychiatric issues, which impeded her thinking ability; she did not fully understand the administrative process and was very panicked by it; and she proceeded *pro se* at the time of her administrative hearing without the assistance of counsel. (Doc. 16, at 12). The Court, however, is not persuaded by Gilbert's arguments as to this issue. The record reflects that at no time during Gilbert's administrative hearing did she specify that she was incompetent, and thus unable to proceed with her administrative hearing due to her mental health conditions. Moreover, the record reflects the ALJ explained to Gilbert her right to an attorney and in response, Gilbert knowingly waived her right to counsel. (*See Admin Tr.* 54-57, 87-90, 99-103). It is longstanding precedent in this jurisdiction that "the fact that a claimant is unrepresented by counsel and has knowingly waived this right is not

alone sufficient for remand. *Pennington*, 683 F. App'x at 170 (quoting

*Livingston v. Califano*, 614 F.2d 342, 345 (3d Cir. 1980). Therefore,

because we find that Gilbert fails to meet the requirements for a remand

under sentence six of § 405(g), we find no basis for remand.

### B. Substantial Evidence Supports the ALJ's Consideration of NP Stephanie King's Opinion

Next, Gilbert argues that the ALJ failed to properly address the

opinion of NP King. (Doc. 16, at 13). Specifically, Gilbert argues:

> N[P] King submitted a letter in May 2018 setting forth
> Plaintiff's diagnoses, symptoms, the fact that treatment has
> had limited success and Plaintiff continues to have
> breakthrough symptoms, and that her impairments preclude
> her from maintaining stable employment. Tr. 776. The ALJ
> never acknowledges this opinion, fails to weigh it upon
> consideration of the regulatory factors set forth at 20 C.F.R. §
> 404.1527(c), and fails to explain why he does not accept the
> opinion that Plaintiff cannot maintain stable employment.
> This is error because the "ALJ is required to consider all
> evidence and to state the reasons for his decision to ensure
> meaningful judicial review." Irizarry v. Barnhart, 233 F.
> App'x 189, 192 (3d Cir. 2007); 20 C.F.R. §
> 404.1527(c)(Regardless of its source, we will evaluate every
> medical opinion we receive."); 20 C.F.R. § 404.1527(f)
> (requiring the ALJ to apply the regulatory factors when
> weighing medical source opinions). The failure to assess this
> opinion is prejudicial because, if credited, it supports
> Plaintiff's burden of demonstrating that she cannot work on a
> regular and continuing basis. This matter should be
> remanded for assessment of this opinion.

(Doc. 16, at 13).

In response, the Commissioner argues that the ALJ did not have an obligation to weigh the opinion of NP King pursuant to the factors set forth under 20 C.F.R. § 404.927(c) because NP King is not an acceptable medical source, therefore she cannot provide a medical opinion."[6] (Doc. 17, at 14-15). The Commissioner further asserts that the ALJ considered NP King's letter and explained that because NP King was not an acceptable medical source, and because the record did not otherwise contain a diagnosis of schizophrenia, NP King's diagnosis was insufficient to find schizophrenia a severe impairment. (Doc. 17, at 16).

The Court of Appeals has ruled that the ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011). The ALJ is charged with a duty to evaluate all the medical opinions in the record under the factors set forth in the regulations and to resolve any conflicts. 20 C.F.R. § 404.1527. Under the regulations, medical opinions are defined as "statements from

---

[6] Gilbert mistakenly references 20 C.F.R. § 404.1527(c), the parallel regulation that applies to claims for disability insurance benefits). The correct citation is 20 C.F.R. § 404.927(c).

physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1). An ALJ may give an opinion less weight or no weight if it does not present relevant evidence or a sufficient explanation to support it, or if it is inconsistent with the record as a whole. 20 C.F.R. § 404.1527(c). The ALJ may choose which medical evidence to credit and which to reject as long as there is a rational basis for the decision. *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999).

Here, we find that substantial evidence supports the ALJ's consideration of NP King's opinion. In the instant case, the ALJ acknowledged the note provided by NP King, which referenced a schizophrenia diagnosis. (Tr. 28). The ALJ, however, concluded that NP King was not an acceptable medical source. (*Id*.). Nevertheless, the ALJ acknowledged the schizophrenia diagnosis and explained that the RFC was based on the limitations supported by the record, regardless of the diagnosis. (*Id*.). The ALJ further explained that the record supported the unskilled RFC with noted time off task due to concentration issues. (*Id*.).

The ALJ explained that this level of activity was not consistent with a finding of "disability" and demonstrated that Gilbert's symptoms and limitations were not wholly work preclusive. (*Id*.). As correctly stated by the Commissioner, pursuant to the regulations, "Nurse practitioners . . . are not 'acceptable medical sources' that can 'establish . . . a medically determinable impairment,' a factor which undermines the reliance that can be placed upon NP King's opinion. (See 20 C.F.R. § 404.1513(a); *see also Roache v. Colvin*, 170 F. Supp. 3d 655, 672 (D. Del. 2016)). However, despite finding that NP King was not an acceptable medical source, the ALJ considered NP King's note referencing a schizophrenia diagnosis. (Tr. 28). Therefore, we find that the ALJ's assessment of NP King's opinion complied with the dictates of the law, and we will not disturb the ALJ's determination as to this issue on appeal.

### C. Substantial Evidence Supports the ALJ's Consideration of Dr. Galdieri's Opinion

Gilbert's last contention, challenges the ALJ's assignment of weight to Dr. Galdieri's opinion. (Doc. 16, at 13-17). Specifically, Gilbert argues that the ALJ erroneously assigned "great" weight to Dr. Galdieri's opinion—a non-examining and non-treating State agency psychologist. (Doc. 16, at 14). Gilbert further contends that Dr. Galdieri issued his

opinion on August 23, 2016, and did not reference any evidence after July 12, 2016. (*Id*.). Thus, Gilbert argues that it is questionable as to whether Dr. Galdieri even reviewed all available evidence before July 2016 because his report omits significant psychiatric findings of record, including her second inpatient hospitalization and her significant ongoing symptoms. (Doc. 16, at 14-17).

Additionally, Gilbert contends that the ALJ erroneously assigned "great" weight to Dr. Galdieri's opinion because his opinion entirely fails on the issue of "sustained concentration and persistence limitations." Specifically, Gilbert argues that Dr. Galdieri's opinion did not explain any concentration and persistence limitations, which warrant remand. (Doc. 16, at 16). Gilbert argues that:

> Defendant's policy provides that the phrase "moderately limited" means "the evidence supports the conclusion that the individual's capacity to perform the activity is impaired." POMS DI 24510.063(B)(2). "The degree and extent of the capacity or limitation must be described in narrative format. . ." Id. "[I]f a consultant's . . .narrative fails to describe the effect that each of the Section I moderate limitations would have on the claimant's ability, or if it contradicts limitations marked in Section I, the MRFCA cannot properly be considered part of the substantial evidence supporting an ALJ's RFC finding." *Carver v. Colvin*, 600 Fed. App'x 616, 619 (10th Cir. 2015). "Agency POMS instructions make clear that Section III cannot ignore conclusions in Section I. On the contrary, the PC is to describe any limitations in narrative

format that he or she found in Section I." *Milner v. Berryhill*,
No. CV 16-1050 GJF, 2018 WL 461095, at *12 (D.N.M. Jan.
18, 2018). [Dr. Galdieri] fails to explain the degree and extent
of the limitations to attention and concentration.

(*Id*.).

In response, the Commissioner argues that the ALJ provided legally and factually sufficient reasons for the weight he assigned to Dr. Galdieri's opinion. (Doc. 17, at 17-22). Thus, the Court should not reweigh the evidence as requested by Gilbert. (Doc. 17, at 21-22). The Commissioner further contends that Gilbert's assertions that the ALJ should not rely on Dr. Galdieri's opinion because he did not have access to the entire record is unavailing. (Doc. 17, at 19). The Commissioner avers that this Court has explained that the fact that a State agency physician "rendered h[is] opinion early in the adjudicatory process is not a reason to render it entitled to less weight. (*Id*.). The Commissioner further contends that Gilbert's attempt to criticize the format of Dr. Galdieri's opinion based on the POMs—relying on out of circuit case law—is not compelling. (Doc. 17, at 20). The Commissioner submits that the Third Circuit has recognized that the POMS "lack the force of law and create no judicially-enforceable right." (*Id.*). *Bordes v. Comm'r of Soc. Sec.*, 235 Fed. App'x 853, 859 (3d Cir. 2007).

It is clear that the ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations. *Chandler*, 667 F.3d at 361. As mentioned *supra*, the ALJ is charged with a duty to evaluate all the medical opinions in the record under the factors set forth in the regulations and to resolve any conflicts. 20 C.F.R. § 404.1527. An ALJ may give an opinion less weight or no weight if it does not present relevant evidence or a sufficient explanation to support it, or if it is inconsistent with the record as a whole. 20 C.F.R. § 404.1527(c). The ALJ may choose which medical evidence to credit and which to reject as long as there is a rational basis for the decision. *Plummer,* 186 F.3d at 429.

"A cardinal principal guiding disability eligibility determinations is that the ALJ accord treating physicians reports great weight, especially when their opinions reflect expert judgment based, on a continuing observation of the patient's condition over a prolonged period of time." *Morales*, 225 F.3d at 317. However, a "treating source's opinion is not entitled to controlling weight if it is 'inconsistent with the other substantial evidence in [the] case record. *Scouten v. Comm'r Soc. Sec.*, 722 Fed. App'x 288, 290 (3d Cir. 2018) (alteration in original (quoting 20

C.F.R. § 404.1527(c)(2)).

Contrary to Gilbert's contentions, we find that substantial evidence supports the ALJ's consideration of Dr. Galdieri's opinion. In this case, the ALJ considered the opinion of Dr. Galdieri and assigned it "great" weight. (Tr. 28). In August 2016, Dr. Galdieri completed a Mental Residual Functional Capacity Assessment. (Tr. 111-12). In the assessment, Dr. Galdieri evaluated Gilbert under the following categories of limitations: (1) understanding and memory, (2) sustained concentration and persistence, (3) social interaction, and (4) adaption. (Tr. 111-12). In the category of understanding and memory limitations, Dr. Galdieri concluded that Gilbert had no limitations. (Tr. 111). In the category of sustained concentration and persistence limitations, Dr. Galdieri opined that Gilbert had moderate limitations in the following areas: the ability to maintain attention and concentration for extended periods; the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; and the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without unreasonable number and length of rest periods.

(Tr. 111-12).

In the category of social interaction limitations, Dr. Galdieri opined that Gilbert had moderate limitations in the following areas: the ability to accept instructions and respond appropriately to criticism from supervisors, and the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. (Tr. 112). Lastly, in the category of adaptation limitations, Dr. Galdieri opined that Gilbert had moderate limitations in the following areas: the ability to respond appropriately to changes in the work setting and the ability to set realistic goals or make plans independently of others. (*Id*.).

The ALJ accorded "great" weight to Dr. Galdieri's opinion. The ALJ reasoned that Dr. Galdieri's opinion was consistent with the longitudinal record, which demonstrated that Gilbert had no more than moderate limitations, as a result of her mental impairments. (*Id*.). The ALJ explained that the medical record revealed that she tends to her personal care; she prepares small meals, cleans, and shops in stores; she draws, reads, rides a bicycle; and she attends church weekly and attends a bible study group. (Tr. 28). Thus, the ALJ assigned "great" weight to the opinion of Dr. Galdieri.

Gilbert argues that the ALJ erroneously assigned "great" weight to the opinion of Dr. Galdieri because Dr. Galdieri issued his opinion based on an incomplete record and his opinion fails to consider ongoing and sometimes worsening significant symptoms. (Doc. 16, at 15). Therefore, Gilbert contends that the ALJ erred in relying on this opinion in forming the RFC. (*Id.*). However, the law is clear,

> There is always some time lapse between the State agency consultant's report and the ALJ hearing and decision. The Social Security regulations impose no limit on how much time may pass between a report and the ALJ's decision in reliance on it. Only where "additional medical evidence is received that in the opinion of the [ALJ] . . . may change the State agency medical . . . consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing," is an update to the report required.

*Chandler*, 667 F.3d at 361 (quoting SSR 96-6p (July 2, 1996)).[7] Thus, Gilbert's contentions on this score are unavailing. Gilbert further contends that the ALJ erroneously assigned "great" weight to the opinion of Dr. Galdieri because the format of his opinion does not align with the requirements set forth in the agency POMS instructions. (Doc. 16, at 16-17). In support of her argument, Gilbert cites out-of-circuit case law. (Doc.

---

[7] SSR 96-6p was rescinded and replaced by SSR 17-2p effective March 27, 2017.

16, at 16-17). The Court is not persuaded by Gilbert's argument as to this issue. As the Commissioner correctly asserts, it is longstanding precedent in the Third Circuit that the POMS "lack the force of law and create no judicially-enforceable rights." *Bordes*, 235 Fed. App'x at 859; *see also Edelman v. Comm'r of Soc. Sec.*, 83 F.3d 68, 71 (3d Cir. 1996).

Whereas, as here, the "ALJ provide[s] sufficient reasons for the weight given to the evidence from [a] . . . treating physician." *Sponheimer v. Comm'r of Soc. Sec.*, 734 Fed. App'x 805, 807 (3d Cir. 2018). As those reasons, in most cases, can be set forth in a sentence or short paragraph, there is no basis for disturbing the ALJ's weight determination. The Plaintiff's argument simply asks the court to reweigh the evidence, which this court cannot do. *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005)("In the process of reviewing the record for substantial evidence, we may not 'weigh the evidence or substitute our own conclusions for those of the fact-finder.'" (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)). Because the Court cannot reweigh the evidence, we find that the ALJ has not erred in assigning "great" weight to the opinion of Dr. Galdieri.

### D. Substantial Evidence Supports the ALJ's Step Five Evaluation

In her last assignment of error, Gilbert argues that because the ALJ erred on all of the issues mentioned above, the ALJ undoubtedly erred in his step five evaluation. Specifically, Gilbert argues that because her case is entitled to a remand under sentence six of § 405(g) and because the ALJ erred in his consideration of NP King and Dr. Galdieri's opinion, the RFC is not supported by substantial evidence. Therefore, Gilbert concludes that the vocational testimony that followed at step five of the sequential evaluation process was improper. As explained in our decision above, we find that the ALJ's assessment of the evidence in this case complied with the dictates of the law and thus, was supported by substantial evidence.

To reiterate, this Court is not now tasked with revisiting these factual issues, and we may not substitute our judgment of that of the ALJ. Instead, we are limited to determining whether the ALJ provided valid reasons for his evaluations and based his conclusions on substantial evidence. Thus, finding that the ALJ provided adequate articulation for these determinations which were grounded in substantial evidence, the Court finds no basis for disturbing the ALJ's determination on this

matter.

    An appropriate Order follows.


Dated: August 20, 2020         ***s/Joseph F. Saporito,  Jr.***
                                                 JOSEPH F. SAPORITO, JR.
                                                 United States Magistrate Judge